FILED
2021 Jan-25  AM 10:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| HOUSING AUTHORITY OF ASHLAND, AL, SOUTHERN DEVELOPMENT COMPANY OF ASHLAND, LTD., SOUTHERN DEVELOPMENT COMPANY OF ASHLAND #2, LTD., and SOUTHERN DEVELOPMENT COMPANY, LLC, | ) ) ) ) ) ) ) ) ) ) Case No. 1:20-cv-01905-ACA |
| Defendants | ) ) |

## AMENDED COMPLAINT

The United States of America ("United States") alleges as follows:

1. The United States brings this action to enforce the provisions of the Fair Housing Act, as amended ("FHA"), 42 U.S.C. §§ 3601 *et seq*.

2. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 3614(a).

3. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because the events or omissions giving rise to this action occurred in this district and the properties that are the subject of this action are situated in this district. In

addition, Defendant Housing Authority of Ashland, Alabama is located in this district.

### A. Defendants

4. Defendant Housing Authority of Ashland, Alabama ("AHA" or "Housing Authority") is a political subdivision of the State of Alabama and is a public body, corporate and politic, created to provide "decent, safe, and sanitary dwelling accommodations for persons of low income" in the Town of Ashland ("Ashland"). Ala. Code §§ 24-1-6(a), 24-1-22(1), 24-1-27(a). Its address is 128 First Street North, Ashland, AL 36251.

5. Defendant Southern Development Company of Ashland, Ltd. is a limited partnership that was organized in 1980 and is the owner of the 40-unit low-income housing development located in Ashland at 100 Ashland Heights Drive ("Ashland Heights I"). Its address is P.O. Box 407, Montgomery, AL 36101.

6. Defendant Southern Development Company of Ashland #2, Ltd. is a limited partnership that was organized in 1980 and is the owner of the 16-unit low-income housing development located in Ashland at 10 Ashland Heights Drive ("Ashland Heights II"). Its address is also P.O. Box 407, Montgomery, AL 36101.

7. Defendant Southern Development Company, LLC is a limited liability corporation based in Montgomery, Alabama, and is under contract to act as the

2

agent for Defendants Southern Development Company of Ashland, Ltd. and Southern Development Company of Ashland #2, Ltd., respectively, to rent the units at Ashland Heights I and Ashland Heights II.  Its address is 44 Market Plaza, Suite 801, Montgomery, AL 36104.

### B. AHA's Seven Housing Communities

8. Beginning in approximately 1958, AHA developed six public housing communities in Ashland, eventually containing 199 units, which it continues to own, operate, and manage as public housing today.  These units are federally subsidized under the United States Housing Act of 1937, 42 U.S.C. § 1437 *et seq.*, and/or through the Rental Assistance Demonstration program under the Consolidated and Further Continuing Appropriations Act, 2012, Pub. Law 112-55, 125 Stat. 673-74, as amended.  AHA's public housing communities are known as East Side, West Side, North Side, Runyon Court, Pine View, and Clay Circle.

9. AHA established its public housing in 1958 as a dual system of public housing segregated by race.  At or around that time, East Side (located on the southeast side of Ashland) was developed as the "white" community, West Side (located on the northwest side of Ashland) was developed as the "colored" community for "non-whites."  AHA subsequently expanded East Side and West

Side and developed the four additional public housing communities, which did not have racial designations when they opened.

10. Since approximately the early 1980s, AHA has managed a seventh low-income housing community in Ashland known as Ashland Heights, which is federally subsidized under the United States Housing Act of 1937, 42 U.S.C. § 1437 *et seq.* and the Housing Act of 1949, 42 U.S.C. § 1441 *et seq.* Ashland Heights is a 56-unit community consisting of two developments, Ashland Heights I and Ashland Heights II.

11. As explained below, the residents of East Side, Clay Circle, and Ashland Heights are disproportionately and overwhelmingly White, and the residents of West Side and Pine View are disproportionately Black. These housing communities are located in areas of Ashland with racial demographics that resemble those of the housing communities. Based on 2010 Census Bureau data, East Side, Clay Circle, and Ashland Heights are located in the far south and east sections of Ashland in Census block groups that are over 80% White. By contrast, Pine View and West Side are located on the opposite side of town, in the far north and west sections of Ashland in Census block groups that are over 60% Black. The disproportionately Black communities are geographically separated from the disproportionately and overwhelmingly White communities by over a mile, across

the centrally located downtown town square area, as well as by two parallel north-south thoroughfares (Alabama State Route 77 and Highway 9) and the main east-west thoroughfare (1st Avenue).

12. The seven housing communities described above, including the units contained therein, are "dwellings" within the meaning of the Fair Housing Act, 42 U.S.C. § 3602(b).

13. Tenant eligibility for any unit in these seven housing communities managed by AHA is limited to low-income tenants.

14. In addition, some of AHA's units are designated as "elderly" or "disabled" units. East Side has 59 units, of which 16 are designated elderly. Clay Circle has 21 units, of which 19 are designated elderly and 2 are designated disabled. Ashland Heights has 56 units, of which 25 are designated elderly and 3 are designated disabled. North Side has 36 units, of which 20 are designated elderly. Runyon Court has 21 units, all of which are designated elderly. West Side has 38 units, of which 7 are designated elderly. Pine View has 24 units, of which 1 is designated disabled.

## C. AHA Maintains Racially Segregated Housing Communities

15. From at least 2012 to the present, AHA has engaged in a pattern or practice of race discrimination by steering applicants to housing communities based on race and by maintaining a racially segregated housing program.

16. Analyses of tenant assignment and occupancy data provided to the United States by AHA show that since at least 2012, tenants at five of AHA's seven communities – East Side, Ashland Heights, Clay Circle, West Side, and Pine View – have lived in housing communities that were disproportionately of one race and that AHA has been assigning tenants to these housing communities based on race.

17. Since at least 2012, Ashland Heights, Clay Circle, and East Side have been disproportionately and overwhelmingly occupied by White tenants and at percentages that are higher than would be expected at these communities if assignments were not based on race. For example, as of June 2018, 69% of all AHA tenants were White but 99% of tenants at Ashland Heights were White, 92% of tenants at East Side were White, and 91% of tenants at Clay Circle were White.

18. Similarly, since at least 2012, West Side and Pine View have been disproportionately occupied by Black tenants at percentages that are higher than would be expected at these communities if assignments were not based on race.

6

For example, as of June 2018, approximately 30% of all AHA tenants were Black, but 73% of tenants at West Side were Black and 65% of tenants at Pine View were Black.

### D. Racial Segregation at AHA Cannot Be Explained by Non-Discriminatory Factors

19.     The degree of racial disparities described above at these five communities is statistically significant and cannot be explained by non-racial factors, such as a potential correlation between race and elderly or disabled status or between race and number of bedrooms or household size.

20.     For example, between 2012 to 2018, Black elderly or disabled tenants were assigned to and lived at AHA's disproportionately Black communities and White elderly or disabled tenants were assigned to and lived at the disproportionately and overwhelmingly White communities in a manner that departs from what would be expected if housing assignments were not based on race.

21.     For another example, Black tenants are disproportionately housed at the disproportionately Black communities as compared to White tenants living in the same bedroom-size unit; and White tenants are disproportionately housed at the disproportionately and overwhelmingly White communities as compared to Black tenants living in the same bedroom-size unit.

22. AHA's recent assignments of applicants and tenants perpetuate the segregation at its housing communities described above. Tenant move-in records and other data show that from at least 2012 through 2018, AHA assigned Black applicants to its disproportionately Black communities and White applicants to its disproportionately and overwhelmingly White communities in a manner that departs substantially from a neutral, non-discriminatory norm.

23. Specifically, between approximately January 1, 2012, through May 16, 2018, AHA filled over 230 vacancies. AHA assigned White applicants to East Side, Clay Circle, and Ashland Heights and assigned Black applicants to West Side and Pine View in percentages that were much higher than would be expected if housing assignments were not based on race.

24. Although 76% of all vacancies at AHA filled by applicants for public housing were filled by White heads of household ("White households") between 2012 and 2018, 95% of vacancies at East Side and 96% of those at Clay Circle were filled by White households. And all or nearly all the vacancies at Ashland Heights during this time were filled by White households. Similarly, although 24% of all vacancies at AHA filled by applicants for public housing were filled by Black heads of household ("Black households") during this time, more than twice that – 56% of vacancies at West Side and 57% at Pine View – were filled by Black

households.  These disparities in housing assignments are statistically significant and cannot be explained by non-discriminatory factors.

   **E. AHA Has Intentionally Denied Black Applicants the Opportunity to Live at its Disproportionately and Overwhelmingly White Communities and Denied White Applicants the Opportunity to Live at its Disproportionately Black Communities**

   25.    The racial segregation and disparities described above are a direct result of AHA's current policies and practices, which deny applicants and tenants the opportunity to live in particular housing communities based on race.  These include AHA's failure to consistently apply its Admissions and Continued Occupancy Policy ("ACOP") and its failure to discuss the nearly all-White Ashland Heights community as an option with prospective Black tenants.

   26.    Adopted by AHA, the ACOP is the policy document that governs admissions and occupancy of the public housing units administered by AHA.

   27.    Among its provisions, the ACOP requires that AHA make public housing assignments from a centralized waiting list maintained by bedroom size in the order in which households applied, with certain preferences for elderly or disabled applicants, and without regard to tenant preference for a particular location.  Instead of following the ACOP, however, between at least 2012 and 2018, AHA followed a practice of disproportionately assigning White households to the disproportionately and overwhelmingly White communities of East Side and

Clay Circle, while disproportionately assigning Black households to the disproportionately Black communities of West Side and Pine View.

28. The ACOP also requires AHA to follow a "one-offer system" in offering applicants housing units. Under this system, if an applicant receives an offer for a unit and declines the offer without "good cause," AHA must place him or her at the bottom of the waitlist. The ACOP states that the purpose of the one-offer system is to prevent discrimination on the basis of race or other grounds. Instead of following the ACOP, however, AHA has followed a practice of allowing applicants to decline offers of units without showing good cause and then not moving the applicant to the bottom of the waitlist. In at least one case, AHA did this even when the applicant explicitly informed AHA its reason for declining the offer was based on not wanting to live near other residents because of their race or national origin.

29. AHA maintains waiting lists for Ashland Heights I and Ashland Heights II that are separate from the centralized public housing waiting list for the public housing properties.

30. The owners of Ashland Heights submit Affirmative Fair Housing Marketing Plans for Ashland Heights to HUD every three years. The 2011, 2014, and 2017 Affirmative Fair Housing Marketing Plans self-reported that Ashland

Heights and its waitlists were all-White or nearly all-White, and that Blacks were one of the groups "least likely to apply [to Ashland Heights] without special outreach efforts." Of the total 74 applicants for Ashland Heights II between 2011 and 2018, not one was Black.

31. Applicants for housing at one of AHA's communities must complete the AHA application form, which contains separate check-boxes, one for "PUBLIC HOUSING" and one each for "Ashland Heights I (Sec 8 New Const)" and "Ashland Heights II (FmHA 515 Elderly)." Applicants must also undergo an in-person interview with one of AHA's staff members. AHA has a practice of choosing not to discuss with Black applicants that they have the option to apply to both public housing and Ashland Heights, despite knowing that Ashland Heights and its waitlist have been all-White or nearly all-White for years and despite that it has the opportunity to do so during this in-person interview.

32. Because Ashland Heights has been all-White or nearly all-White for years, AHA's failure to discuss Ashland Heights with applicants harms Black applicants, who are unlikely to apply for available units at Ashland Heights.

33. According to HUD's "Implementing Affirmative Fair Housing Marketing Requirements" Handbook, Handbook 8025.1 REV-2, Ch. 4, HUD requires that the owner and its agents conduct outreach to specific groups who may

be unlikely to apply. Yet AHA has failed to do so here with Black applicants, despite that the Ashland Heights owners acknowledge that Black applicants are least likely to apply to Ashland Heights.

34. Moreover, between at least 2012 and 2017, AHA assigned multiple (non-elderly, non-disabled) White applicants ahead of comparable Black applicants to units at disproportionately and overwhelmingly White communities, even though Black applicants had higher positions on the waiting list. Similarly, in filling vacancies at disproportionately Black communities, AHA assigned multiple (non-elderly, non-disabled) Black applicants ahead of comparable White applicants, even though White applicants had higher positions on the waiting list.

**F. AHA Engaged in Discriminatory Conduct Regarding Ashland Heights While Acting as the Agent of Defendants Southern Development Company of Ashland, Ltd., Southern Development Company of Ashland #2, Ltd., and Southern Development Company, LLC.**

35. At all times relevant to the allegations in this lawsuit, AHA's conduct concerning Ashland Heights was performed in its role as manager of Ashland Heights and agent of Southern Development Company of Ashland, Ltd., Southern Development Company of Ashland #2, Ltd., and Southern Development Company, LLC, and AHA acted within the scope of its agency while engaging in the conduct described herein.

36. Defendants Southern Development Company of Ashland, Ltd. and Southern Development Company of Ashland #2, Ltd., as owners of Ashland Heights, are liable for the conduct of their agents.

37. Defendant Southern Development Company, LLC, as agent for Southern Development Company of Ashland, Ltd. and Southern Development Company of Ashland #2, Ltd., is responsible for renting the units at Ashland Heights I and Ashland Heights II, and is liable for the conduct of its agents.

**G. AHA's Conduct Violates the Fair Housing Act**

38. The allegations set forth above are hereby re-alleged and incorporated by reference.

39. Through its discriminatory policies and practices described above, AHA has harmed applicants and tenants. AHA has done so by:

   a. offering and assigning tenants to units in segregated housing based on the race of the applicants;

   b. skipping qualified Black applicants on the waiting list to fill vacancies at disproportionately and overwhelmingly White communities with later-applying White applicants, thereby delaying or denying Black applicants housing and further segregating AHA's housing;

    c. skipping qualified White applicants on the waiting list to fill vacancies at disproportionately Black communities with later-applying Black applicants, thereby delaying or denying White applicants housing and further segregating AHA's housing;

    d. allowing applicants who decline offers of housing without showing good cause, even when they decline offers for race-based reasons, to maintain their position on the waiting list, thereby violating the ACOP's one-offer system requirement intended to prevent race discrimination; and

    e. failing to discuss Ashland Heights with Black applicants or conduct required outreach to prospective Black tenants about Ashland Heights.

40. By engaging in the conduct described above, the defendants have: (a) refused to rent, refused to negotiate for the rental of, and otherwise made unavailable or denied dwellings to persons because of race or color, in violation of 42 U.S.C. § 3604(a); and (b) discriminated in the terms, conditions, or privileges of rental of dwellings on the basis of race or color, in violation of 42 U.S.C. § 3604(b).

41. The conduct of defendants constitutes:

    a. A pattern or practice of resistance to the full enjoyment of rights secured by the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*; and

    b. A denial to a group of persons of rights granted by the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, which denial raises an issue of general public importance.

42. Individuals who were subjected to defendants' discriminatory housing practices are aggrieved persons as defined by the Fair Housing Act, 42 U.S.C. § 3602(i), and have suffered actual injury and damages as a result of defendants' conduct as described above.

43. Defendants' conduct described above was intentional, willful, and taken with disregard for the rights of others.

## Claim for Relief

WHEREFORE, the United States asks that the Court enter an order that:

A. Declares that defendants' policies and practices, as alleged herein, violate the Fair Housing Act, as amended, 42 U.S.C. § 3601 *et seq.*;

B. Enjoins defendants, their agents, employees, and successors, and all others in active concert or participation with them, from discriminating on account of race or color against any person in any aspect of the rental of a dwelling;

C. Requires defendants to take all necessary and appropriate affirmative steps to correct, to the extent practicable, the continuing effects of their past and present discriminatory practices;

D. Requires such action by defendants as may be necessary to restore, as nearly as practicable, all persons aggrieved by defendants' discriminatory housing practices to the position these persons would have occupied but for defendants' discriminatory conduct;

E. Awards monetary damages to each person aggrieved by defendants' discriminatory housing practices, in accordance with 42 U.S.C. § 3614(d)(1)(B); and

F. Assesses a civil penalty against each defendant in an amount authorized by 42 U.S.C. § 3614(d)(1)(C), to vindicate the public interest.

The United States further prays for such additional relief as the interests of justice may require.

JURY TRIAL DEMANDED.

Dated: January 25, 2021

<table>
<tr><td></td><td>MONTY WILKINSON<br>Acting Attorney General</td></tr>
<tr><td>PRIM F. ESCALONA<br>United States Attorney<br>Northern District of Alabama</td><td>GREGORY B. FRIEL<br>Deputy Assistant Attorney General<br>Civil Rights Division</td></tr>
<tr><td>LANE WOODKE<br>Chief, Civil Division</td><td>SAMEENA SHINA MAJEED<br>Chief, Housing and Civil Enforcement Section</td></tr>
<tr><td>JASON R. CHEEK<br>Deputy Chief, Civil Division</td><td>MICHAEL S. MAURER<br>Deputy Chief</td></tr>
<tr><td>*s/Carla Ward*<br>CARLA C. WARD<br>Assistant United States Attorney<br>U.S. Attorney's Office<br>Northern District of Alabama<br>1801 4th Avenue North<br>Birmingham, AL 35203<br>Phone: (205) 244-2185<br>Fax: (205) 244-2181<br>E-mail: *Carla.Ward@usdoj.gov*</td><td>*s/Kathryn Legomsky*<br>KATHRYN LEGOMSKY<br>SARA L. NILES<br>Trial Attorneys<br>Housing and Civil Enforcement Section<br>Civil Rights Division<br>U.S. Department of Justice<br>950 Pennsylvania Ave. NW – 4CON<br>Washington, D.C. 20530<br>Phone: (202) 616-2450<br>Fax: (202) 514-1116<br>E-mail: *Kathryn.Legomsky@usdoj.gov*</td></tr>
</table>