FILED
2021 May-12  PM 03:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **Civ. No: 1:20-cv-01905-ACA** |
| | ] | |
| **HOUSING AUTHORITY OF** | ] | |
| **ASHLAND ALABAMA, et al.,** | ] | |
| | ] | |
| **Defendants.** | ] | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court are Defendant Housing Authority of Ashland Alabama's (the "Housing Authority") motion for summary judgment or for a more definite statement (doc. 11) and Defendants Southern Development Company of Ashland, Ltd., Southern Development Company of Ashland #2, Ltd., and Southern Development Company, LLC's (together the "Southern Defendants"), motion for summary judgment or for a more definite statement (doc. 12).  Also before the court is the Housing Authority's motion for sanctions and fees.  (Doc. 23).

Plaintiff United States of America alleges that the Housing Authority employed discriminatory policies and practices in managing several publicly-funded housing communities in violation of the Fair Housing Act ("FHA"). Both the Housing Authority and the Southern Defendants argue that the amended complaint fails to state a claim and is too vague to provide them with notice of the claims

against them. (Doc. 11; Doc. 12). The Housing Authority goes further, arguing that the United States' complaint is so deficient that the court should impose sanctions on the United States. (Doc. 23). The amended complaint, however, is properly drafted and states a claim for race discrimination in violation of the FHA. Accordingly, the court **DENIES** the pending motions.

## I.    BACKGROUND

At this stage, the court must accept as true the factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *Butler v. Sheriff of Palm Beach Cty.*, 685 F.3d 1261, 1265 (11th Cir. 2012).

The Housing Authority is a political subdivision of the State of Alabama created to provide low-income housing in Ashland, Alabama. (Doc. 9 at 2). In 1958, the Housing Authority developed two public housing communities in Ashland, the East Side and West Side communities. (*Id.* at 3). The Housing Authority originally established these communities as part of a racially segregated public housing system: East Side was designated as a "white" community and West Side as a "non-white" community. (*Id.*). Later, the Housing Authority expanded, adding several integrated communities named North Side, Runyon Court, Pine View, and Clay Circle. (*Id.*).

In the early 1980s, the Housing Authority began managing a seventh low-income housing community known as Ashland Heights. (Doc. 9 at 4). Ashland Heights consists of two housing developments—Ashland Heights I and Ashland

Heights II—both of which are federally funded. (*Id.*). Two of the Southern Defendants own the Ashland Heights developments and the third, Southern Development Company, LLC, acts as their agent. (*Id.* at 2–3). The Housing Authority manages Ashland Heights as the Southern Defendants' agent. (*Id.* at 4).

Since at least 2012, five of the seven communities the Housing Authority operates house occupants that are disproportionately of one race. (Doc. 9 at 6). Ashland Heights, Clay Circle, and East Side are largely occupied by White[1] tenants and West Side and Pine View are disproportionately occupied by Black tenants. (*Id.*). For example, in June 2018, 69% of the Housing Authority's tenants were white, but 99% of tenants at Ashland Heights were White, 92% of tenants at East Side were White, and 91% of tenants at Clay Circle were White. (*Id.*). At the same time, 30% of all Housing Authority tenants were Black, but 73% of tenants at West Side were Black and 65% of tenants at Pine View were Black. (*Id.*).

The racial disparity extends to new tenants, ensuring continued segregation at the Housing Authority's communities. Between January 2012 and May 2018, the Housing Authority filled over 230 vacancies. (Doc. 9 at 8). Of the tenants filling those vacancies, 76% were White households. (*Id.*). But 95% of the vacancies at East Side and 96% of those at Clay Circle were filled by White households. (*Id.*).

---

[1] The court adopts the stylistic convention used by the parties and will capitalize both "Black" and "White." (*See, e.g.*, Doc. 9 at 4; Doc. 11 at 5; Doc. 12 at 17).

Likewise, although 24% of the Housing Authority's overall vacancies were filled by Black households, 45% of vacancies at West Side and 57% at Pine View were filled by Black households. (*Id.*).

The Housing Authority has an Admissions and Continued Occupancy Policy ("Admissions Policy") that governs the public housing units administered by the Housing Authority. (Doc. 9 at 9). The Admissions Policy requires that the Housing Authority curate a centralized waiting list for public housing applicants in the order in which households applied for housing and without regard to tenant preference for a particular location. (*Id.*). The Admissions Policy also requires that the Housing Authority follow a one-offer policy intended to prevent discrimination. (*Id.* at 10). The one-offer policy required applicants to either accept an offer for housing from the Housing Authority or show good cause for declining the offer. (*Id.* at 10). Under this policy, the Housing Authority moves applicants who decline an offer without good cause to the bottom of the waiting list. (Doc. 9 at 10).

The complaint alleges that the Housing Authority does not follow its Admissions Policy. (*Id.*). When an applicant fails to show good cause for declining a housing offer, the Housing Authority does not move the applicant to the bottom of the waiting list. (Doc. 9 at 10). In one instance, the Housing Authority failed to move the applicant to the bottom of the waiting list after the applicant "explicitly informed [the Housing Authority] its reason for declining the offer was based on not

4

wanting to live near other residents because of their race or national origin." (*Id.*). The Housing Authority's failure to follow the Admissions Policy injures applicants by "skipping Black applicants on the waiting list to fill vacancies at disproportionately and overwhelmingly White communities with later-applying White applicants . . . [and] skipping qualified White applicants on the waiting list to fill vacancies at disproportionately Black communities with later-applying Black applicants . . . ." (*Id.* at 13).

The owners of Ashland Heights also submit an Affirmative Fair Housing Marketing Plan ("Marketing Plan") to the Department of Housing and Urban Development ("HUD") every three years. (Doc. 9 at 10). The three Marketing Plans submitted during the relevant time period reported that the waitlist for Ashland Heights were all-White or nearly all-White and that Blacks were one of the groups least likely to apply to the Ashland Heights community. (*Id.* at 10–11). For example, of the seventy-four applicants to Ashland Heights II between 2011 and 2018, none of the applicants were Black. (*Id.* at 11). The United States alleges that this represents a failure to "conduct outreach to specific groups who may be unlikely to apply" to certain communities as required by HUD guidelines. (*Id.* at 12–13).

This outreach failure is further exacerbated by the Housing Authority's application process. The application requires each applicant to select among separate boxes for "PUBLIC HOUSING," "Ashland Heights I (Sec 8 New Const),"

and "Ashland Heights II (FmHA 515 Elderly)." (Doc. 9 at 11). Applicants must also undergo an in-person interview with the Housing Authority. (*Id.*). And the Housing Authority does not discuss the option to apply to both Ashland Heights and public housing with Black applicants. (*Id.* at 11).

Alleging that the Housing Authority's conduct violates the FHA, the United States brought this suit. (*Id.* at 14–15). The United States also alleges the Housing Authority acted as the agent of the Southern Defendants, subjecting the Southern Defendants to vicarious liability for the Housing Authority's conduct. (*Id.* at 12). Both the Housing Authority and the Southern Defendants filed motions to dismiss or for a more definite statement (docs. 11, 12), and the Housing Authority moved for sanctions and fees pursuant to Federal Rule of Civil Procedure 11 (doc. 23).

## II. DISCUSSION

The Housing Authority and the Southern Defendants' arguments—both for dismissal and for a more definite statement—largely hinge on confusion about which theory of discrimination the United States is advancing. But at this stage, the United States only needs to plausibly state a claim for relief. The amended complaint states a claim for race-based discrimination in violation of the FHA and complies with the pleading standards of the Eleventh Circuit and the Federal Rules of Civil Procedure. Accordingly, the court **DENIES** the motions.

1.  <u>The Motions to Dismiss or for a More Definite Statement</u>

"To survive a [Rule 12(b)(6)] motion to dismiss, the plaintiff must plead 'a claim to relief that is plausible on its face.'" *Butler*, 685 F.3d at 1265 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This standard "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quotation marks omitted).  Rule 12(e), by contrast, allows the court to order a more definite statement when the pleading "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e).

It is a violation of § 3604(a) of the FHA to "refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin."  42 U.S.C. § 3604(a).  Section 3604(b) prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling" because of the same protected classes. *Id.* § 3604(b).

A plaintiff can establish a violation of the FHA by making either a disparate-treatment claim or a disparate-impact claim. *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 524 (2015) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009)). Further, the Attorney General can sue under the FHA whenever he "has reasonable cause to believe" that (1) "any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights [under the FHA];" or that (2) "any group of persons has been denied any of the rights granted by this subchapter and such denial raises an issue of general public importance." 42 U.S.C. § 3614(a).

The complaint here alleges violations of §§ 3604(a) and (b) (doc. 9 at 14) and alleges sufficient facts to state a claim under all three theories of liability (*id.* at 3–13). At this stage, the United States does not have to choose one theory but can advance its claim under each theory independently. *See Hallmark Devs., Inc. v. Fulton Cty., Ga.*, 466 F.3d 1276, 1283–85 (11th Cir. 2006) (analyzing the appellant's FHA claim under both intentional discrimination and disparate impact theories of liability).

The United States alleges that the Housing Authority steered tenants toward certain housing complexes by violating their own one-offer policy. (Doc. 9 at 10). Specifically, the United States alleges that the Housing Authority did not move applicants who declined offers without showing good cause to the bottom of the

8

waiting list, even, in one example, when the applicant's reason for declining the offer was explicitly discriminatory.  (*Id.*).  This process resulted in White tenants accepting offers to live at majority White communities "even though Black applicants had higher positions on the waiting list."  (Doc. 9 at 12).  The United States also presents significant statistical evidence to support its claim.  When viewed in the light most favorable to the United States, the evidence here is more than sufficient to support a claim for race discrimination in violation of the FHA.

Finally, Defendants' arguments for a more definite statement are meritless. Repleading is appropriate when a complaint "is so vague or ambiguous that the party cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e).  Here, the United States' claim is supported with enough factual specificity to allow Defendants to prepare a response.  Because the complaint complies with Federal Rules of Civil Procedure and the pleading standards of the Eleventh Circuit, no more definite statement is necessary.  Accordingly, the court **DENIES** Defendants' motions to dismiss or for a more definite statement.  (Doc. 11, 12).

### 2.  The Housing Authority's Motion for Rule 11 Sanctions and Fees

The Housing Authority also moves for sanctions and fees against the United States pursuant to Federal Rule of Civil Procedure 11.  (Doc. 23).  "Rule 11 sanctions are warranted when a party files a pleading that (1) has no reasonable factual basis; (2) is based on a legal theory that has no reasonable chance of success and that cannot

be advanced as a reasonable argument to change existing law; and (3) is filed in bad faith for an improper purpose." *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998).  In short, "the purpose of Rule 11 is to deter frivolous lawsuits . . . ." *Id.*

There is no frivolity here.  The Housing Authority's arguments in favor of sanctions rely primarily on minor misstatements in the amended complaint.  But the purpose of Rule 11 is not to punish minor inconsistencies.  Accordingly, the court **DENIES** the Housing Authority's motion for sanctions and fees.  (Doc. 23).

## III.   CONCLUSION

The court **DENIES** the Defendants' motions to dismiss and for a more definite statement (docs. 11, 12) and **DENIES** the Housing Authority's motion for sanctions and fees (doc. 23).

**DONE** and **ORDERED** this May 12, 2021.

_____

**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE